United States District Court
District of Massachusetts

| | |
|---|---|
| CORRIN CHURCH, | ) |
| | ) |
| Plaintiff, | ) |
| | )     Civil Action No. |
| v. | )     24—10470-NMG |
| | ) |
| UNITED STATES, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM & ORDER

GORTON, J.

This case arises from the unauthorized disclosure of sensitive data of a healthcare patient.  In May, 2022, Harbor Health Services, Inc. ("Harbor Health") confirmed that one of its employees, Angelica Barroso ("Barroso"), had improperly accessed the personal data of plaintiff Corrin Church ("Church" or "plaintiff") and disseminated it to another Harbor Health employee, Michelle Tocco ("Tocco").

Plaintiff filed a 12-count complaint alleging negligence and invasion of privacy against Harbor Health, Barroso, Tocco and two unnamed "Doe" employees of Harbor Health.  The suit also

-1-

names the United States ("the government") as the employer of Harbor Health.[1]

Pending before the Court are motions to dismiss by defendants Tocco, Harbor Health, and the government, as well as a motion by Harbor Health to substitute the government as a party defendant. Because the government is already a party defendant to the same claims as Harbor Health, the motion to substitute will be denied as moot. See McCloskey v. Mueller, 385 F. Supp. 2d 74, 77 (D. Mass. 2005) (finding no substitution is required where the government is already a named defendant in the case). For the reasons that follow, the motions to dismiss of defendants Tocco and the government will be allowed in full, while the motion to dismiss of Harbor Health will be allowed, in part, and denied, in part.

I.    **Background**

   **A. Facts**

According to the complaint, Harbor Health is a federally funded and community-based health care facility doing business as Harbor Community Health Center-Hyannis, located in Barnstable County, Massachusetts. Harbor Health is covered under the Health Centers Act and deemed an employee of the Public Health

---

[1] Harbor Health is deemed an employee of the Public Health Service ("PHS").

-2-

Service under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233.

Between January, 2017, and May, 2022, plaintiff was a patient of Harbor Health, during which time she disclosed sensitive medical and mental health information, including neuropsychological testing results. Her private information, like that of other Harbor Health patients, was stored in an Electronic Health Record ("EHR").

During the time that plaintiff was a patient at Harbor Health, Barroso was one of its employees in an unspecified "administrative capacity." At some point between 2021 and April, 2022, Barroso acted in coordination with Tocco, another Harbor Health employee, to access plaintiff's EHR. Barroso then used that information to harass and intimidate plaintiff, which was allegedly the latest in a long pattern of stalking and harassment by Barroso of the plaintiff since childhood.

On two occasions in April, 2022, plaintiff reported to Harbor Health staff that she was concerned that someone had improperly accessed her records. In May, 2022, Harbor Health confirmed that Barroso had accessed plaintiff's EHR without authorization and terminated Barroso for her "improper and unauthorized access" to plaintiff's EHR.

Plaintiff brings 12 common-law tort claims: six claims of invasion of privacy, one against each defendant (the government, Harbor Health, J. Doe, K. Doe, Barroso, and Tocco), four claims of negligence against the government, Harbor Health, and the Doe defendants, and two claims of intentional tort against Barroso and Tocco.

Plaintiff alleges significant emotional and physical harm, including post-traumatic stress disorder, anxiety, depression, and the exacerbation of Bipolar II Disorder and Attention Deficit Disorder Hyperactivity Disorder Combined Type conditions.  She also claims financial damages, including medical expenses, loss of earning capacity and relocation costs after moving to Florida due to the distress caused by the disclosures.

### B.        Procedural History

In May, 2023, plaintiff presented her written claim against the government to the Deputy Associate General Counsel of the General Law Division, Claims and Employment Law Branch.  She did so within two years of the date her claim accrued, in compliance with 28 U.S.C. § 2401(b).

In February, 2024, plaintiff filed the instant complaint in this Court.  The complaint raises claims of negligence against the government and Harbor Health for failing to establish

-4-

appropriate onboarding processes for new employees and technical safeguards for patient data, as well as for failing to supervise employees properly and respond to incidents of unauthorized access to patient data.

In April, 2024, Tocco filed a motion to dismiss Counts XI and XII, disputing that she ever worked at Harbor Health and arguing that the complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In June, 2024, the government filed a motion to dismiss for lack of jurisdiction, contending that plaintiff's claims are not actionable under the Federal Tort Claims Act ("FTCA") and it has not waived sovereign immunity. Harbor Health then filed two motions: 1) a motion to dismiss, which adopted in whole the arguments put forward by the government, and 2) a motion to substitute the government as a party for the claims made against Harbor Health based on the immunity provisions of the Public Health Service Act, 42 U.S.C. § 233(a). The motion to substitute the United States is moot because it is already a party to the same claims as Harbor Health.

## II. <u>Motion to Dismiss for Lack of Jurisdiction</u>

### A. Legal Standard

A district court must dismiss claims under Fed. R. Civ. P. 12(b)(1) if it lacks subject matter jurisdiction to decide those

claims.  To assess a motion to dismiss pursuant to Fed. R. Civ.
P. 12(b)(1), dismissal is warranted "only when the facts alleged
in the complaint, taken as true, do not justify the exercise of
subject matter jurisdiction." Muniz-Rivera v. United States, 326
F.3d 8, 11 (1st Cir. 2003).  Just as for a motion to dismiss for
failure to state a claim under Fed. R. Civ. P. 12(b)(6), the
Court "must credit the plaintiff's well-pled factual allegations
and draw all reasonable inferences in the plaintiff's favor."
Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).
The Court may, however, decide the jurisdiction issue by looking
beyond the pleadings without converting the motion into one for
summary judgment. Gonzalez v. United States, 284 F.3d 281, 288
(1st Cir. 2002).

Pursuant to the doctrine of sovereign immunity, a district
court lacks jurisdiction over claims filed against the
government unless and until the sovereign consents to being
sued. Reyes-Colón v. United States, 974 F.3d 56, 58 (1st Cir.
2020).  The FTCA provides such consent with respect to certain
tort claims, subject to several exceptions. See FDIC v. Meyer,
510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)
(citing 28 U.S.C. § 1346(b)).  A claim brought under the FTCA is
only actionable if it is:

> [1] against the United States, [2] for money damages, . . .
> [3] for injury or loss of property, or personal injury or
> death [4] caused by the negligent or wrongful act or
> omission of any employee of the Government [5] while acting
> within the scope of his office or employment, [6] under
> circumstances where the United States, if a private person,
> would be liable to the claimant in accordance with the law
> of the place where the act or omission occurred.

Id. (alteration in original) (quoting § 1346(b)).  The test is

conjunctive: the plaintiff must plausibly allege all six

elements in order to establish that a federal district court has

subject-matter jurisdiction over the claims. Brownback v. King,

529 U.S. 209, 217-18, 141 S. Ct. 740, 749, 209 L.Ed.2d 33

(2021).

The FSHCAA extended the application of the FTCA to private

health centers receiving federal grants under 42 U.S.C.

§ 254(b). O'Brien v. United States, 56 F.4th 139, 147 (1st Cir.

2022). It rendered the FTCA the exclusive remedy for

> damage for personal injury, including death, resulting from
> the performance of medical, surgical, dental, or related
> functions, including the conduct of clinical studies or
> investigation, by any commissioned officer or employee of
> the Public Health Service while acting within the scope of
> his office or employment.

42 U.S.C. § 233(a) ("Section 233(a)").  The statute thereby

> grants absolute immunity to PHS officers and employees for
> actions arising out of the performance of medical or
> related functions within the scope of their employment by
> barring all actions against them for such conduct [and]
> limits recovery for such conduct to suits against the
> United States.

Hui v. Castaneda, 559 U.S. 799, 806, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010) (cleaned up).

## B. Application

### 1. Negligence

The government argues that the complaint does not allege an injury resulting from the performance of functions for which Section 233(a) makes the remedy against it exclusive. Harbor Health is therefore not immune from suit and the government has not waived its sovereign immunity. Specifically, the government further contends that plaintiff's allegations involve general business functions that Harbor Health performed (or failed to perform), none of which constitute "medical or related functions" falling within the ambit of Section 233(a). The government relies on the First Circuit Court of Appeals ("the First Circuit") decision Mendez v. Belton, which held that the language in Section 233(a) is a waiver of sovereign immunity for "suits that sound in malpractice." 739 F.2d 15, 19-20 (1st Cir. 1984).

Harbor Health and Church insist otherwise, characterizing the protection of patient data as a "function of health care professionals . . . inextricably woven into patient care" based

on healthcare providers' obligations, under HIPAA, the American
Medical Association's Code of Ethics and federal statute.[2]

Again, plaintiff alleges that the unauthorized access to
her health records was caused by the "negligent failure" of
Harbor Health

(1) to establish appropriate onboarding processes and new hire orientation,
(2) to obtain, adopt, and implement administrative and technical safeguards and security features in its Electronic Health Record that prevent[s] the ability and likelihood for non-medical staff members to access sensitive patient information,
(3) to properly supervise and monitor its employees['] activities [and]
(4) to recognize and appropriately respond to incidents of unauthorized access to patient[s'] medical charts.

Defendants explain that the cases in which other plaintiffs
have successfully invoked these immunity statutes involve claims
by patients against doctors for damages caused by improper
medical treatment. Mendez v. Belton, 739 F.2d 15, 20 (1st Cir.
1984) (citing Baker v. Barber, 673 F.2d 147, 148 (6th Cir.
1982); Apple v. Jewish Hosp. & Med. Ctr., 570 F. Supp. 1320,
1321 (E.D.N.Y. 1983)).

Plaintiff responds that the government's interpretation of
Mendez, i.e., that the suit must be one for medical malpractice,
is too restrictive.  She cites a Ninth Circuit decision in

---

[2] 42 U.S.C. § 254(b)(k)(3)(C) requires health centers to implement quality
improvement systems that "maintain[] the confidentiality of patient records."

Friedenberg v. Lane County, 68 F.4th 1113, 1118 (9th Cir. 2023)
and an unpublished decision in this District, Pomeroy v. United
States, No. 17-cv-10211-DJC, to illustrate that Mendez can apply
to administrative functions such as failure to establish proper
onboarding processes and implement safeguards to protect EHR
access.  This court disagrees.

     The term "related functions" acts as catchall for specific
functions, "the performance of medical, surgical, [or] dental
[functions]." Ford v. Sandhills Med. Found., Inc., 97 F.4th 252,
259 (4th Cir. 2024).  Pursuant to the principles of statutory
interpretation, a general term such as "related" must be
construed as sharing the attributes of the more specific words
preceding it.  See Yates v. United States, 574 U.S. 528, 544
(2015).  Thus, "related functions" should be read as "fitting
within . . . a field of heath care outside of medicine, surgery,
or dentistry." Ford, 97 F.4th at 259-60.

     With that definition in mind, it is clear that general
employee onboarding, orientation and supervision are not
"related functions" covered by Section 233(a).  The claims
against Harbor Health do not relate to medical care but rather
to its administrative handling of non-medical staff.

     Whether failure to protect a patient's medical data
constitutes a "related function" is a closer question.  It is

here that this case departs from the most analogous case, Ford.
Just as here, the plaintiff in Ford sued a hospital for
negligent protection of her data after a cyberattack led to the
theft and misuse of her personally identifying information
("PII"). But unlike Ford, plaintiff in this case was actively
receiving medical care from Harbor Health at the time that her
data was improperly accessed. Defendants Barroso and Tocco are
alleged to have stolen her specific medical data, not simply
general PII. And while data protection may not be an "activity
that the field of healthcare is particularly fitted to execute,"
as the Fourth Circuit explains, "maintaining the confidentiality
of patient records," as required by statute, is. The Court in
Ford emphasized all three of these factors in explaining its
decision that Section 233(a) did not apply. See id. at 260-61.

      The Court must then

      look[] to Massachusetts law to define medical malpractice
      and, thus, the activity to which the United States has
      waived sovereign immunity.

Pomeroy, 2018 WL 1093501, at *4. Massachusetts defines medical
malpractice broadly to encompass "all treatment-related claims."
Vasa v. Compass Med., P.C., 456 Mass. 175, 177 (2010) (quoting
Little v. Rosenthal, 376 Mass. 573, 576(1978)).

      Creating and maintaining cybersecurity systems to protect
patient data is not treatment related. The Massachusetts

medical malpractice statute requires cases to be heard by a specialized tribunal. M.G.L.c. 231, § 60B. Yet even though the statute covers the conduct of both physicians and non-physicians alike, this Court is unaware of a single case brought by a plaintiff against a hospital or an employee data security expert for failure to implement sufficient EHR security protocols. At most, malpractice cases involving confidentiality breaches are brought against physicians or other treating professional (e.g., nurses) for disclosure of medical records in the course of their direct treatment of patients. See, e.g., Alberts v. Devine, 395 Mass. 59 (1985); Hannaway v. Cole, 311 N.E.2d 924 (Mass. App. Ct. 1974).

The Court therefore concludes that plaintiff's alleged injuries did not arise out of the performance of medical or related functions. As such, the government has not waived sovereign immunity and will be dismissed from this suit for lack of jurisdiction.

### 2. Invasion of Privacy

The government further asserts that this Court lacks jurisdiction over claims made against it because Barroso was not acting within the scope of her employment when accessing and disseminating plaintiff's sensitive health data, rendering the claim non-actionable under the FTCA.

Barroso's employment at Harbor Health involved unspecified administrative responsibilities which may or may not have included access to patient records as part of her legitimate duties.  Regardless, it is reasonable to infer that accessing records for the purpose of harassing a patient was certainly outside the scope of her job description. See Advanced Tech. Corp. v. Instron, Inc., 925 F. Supp. 2d 170, 182 n.70 (D. Mass. 2013) ("At the motion to dismiss stage, the court may draw reasonable inferences from the facts.").

The complaint states explicitly that Barroso and Tocco committed the tortious acts "for the sole purpose of harassing, intimidating and causing emotional distress" to plaintiff.  That inherently precludes fulfillment of the scope of employment element under the FTCA.  The "scope of employment" element of the FTCA is defined by the law of the state in which the alleged negligence occurred. Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991) (citing Williams v. United States, 350 U.S. 857, 76 S. Ct. 100, 100 L.Ed. 761 (1955) (per curiam)).  In Massachusetts, conduct of an agent is considered within the "scope of his employment" if

> if it is of the kind he is employed to perform; if it
> occurs substantially within the authorized time and space
> limits; and if it is motivated, at least in part, by a
> purpose to serve the employer.

Wang Labs., Inc. v. Bus. Incentives, Inc., 398 Mass. 854, 859, 501 N.E.2d 1163, 1166 (1986) (citations omitted). Massachusetts law does not extend scope of employment to conduct that is purely personal and disconnected from the employer's interests. Pinshaw v. Metro. Dist. Comm'n, 402 Mass. 687, 694-95 (1988).

The First Circuit has recognized that an employer may sometimes be responsible for its employee's unauthorized conduct when the conduct is "sufficiently similar or incidental to authorized conduct." McIntyre ex rel. Estate of McIntyre v. United States, 545 F.3d 27, 39 (1st Cir. 2008). Barroso's unauthorized actions were neither incidental nor similar to authorized conduct that would advance the goals of Harbor Health.

In McIntyre, the First Circuit determined that one of FBI agent John Connolly's primary responsibilities was to cultivate and manage informants, including maintaining their trust. Id. at 39-40. Connolly had previously leaked information to his informants as a means of securing that trust and, while the FBI may not have explicitly sanctioned his methods, it had repeatedly praised and rewarded him for his success in handling high-value informants. Id. at 40. The FBI's consistent approval of Connolly's work, despite concerns raised about his relationships with informants, demonstrated that the

-14-

organization had some reason to anticipate that Connolly might engage in such conduct. Id. at 45 (FBI Headquarters knew that other law enforcement agencies suspected Connolly of being the source of the leaks, but neither investigated the allegations nor terminated Connolly as its contact).

Here, Barroso's misconduct was entirely unrelated to the goals or interests of Harbor Health.  Unlike Connolly, who leaked information as part of a misguided but employer-aligned effort to maintain an informant relationship, plaintiff alleges that Barroso's sole purpose was to harass, intimidate and cause emotional distress to the plaintiff.  The complaint explicitly exclaims that her actions had no legitimate connection to her official duties, nor did they further Harbor Health's interests in any way.  Moreover, whereas the FBI praised and promoted Connolly despite his conduct, Harbor Health took immediate action to terminate Barroso as soon as her misconduct became known.  While the First Circuit found that the FBI's actions and objectives created a context in which Connolly's conduct was considered to be within the scope of his employment, no comparable circumstances exist here.

Because plaintiff has not shown that the tortfeasors (Barroso and Tocco) acted within the scope of their employment, the claims are not actionable under the FTCA.  The government

has therefore not waived its sovereign immunity and this Court lacks jurisdiction over claims brought against the government.

III. **Motion to Dismiss for Failure to State a Claim**

### A. Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the subject pleading must state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the "court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The reviewing court "may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if "actual proof of those facts is

improbable." <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (quoting <u>Twombly</u>,

550 U.S. at 556).  Rather, the necessary "inquiry focuses on the

reasonableness of the inference of liability that the plaintiff

is asking the court to draw." <u>Id.</u> at 13.  The assessment is

holistic:

> [T]he complaint should be read as a whole, not parsed piece
> by piece to determine whether each allegation, in
> isolation, is plausible.

<u>Hernandez-Cuevas</u> v. <u>Taylor</u>, 723 F.3d 91, 103 (1st Cir. 2013)

(quoting <u>Ocasio-Hernandez</u>, 640 F.3d at 14).

**B. Application**

**1. Claims against Harbor Health**

Harbor Health adopts in its entirety the argument of the

government in its motion to dismiss for lack of jurisdiction:

> [T]he unauthorized accessing and sharing of protected
> healthcare information by a now-former employee cannot
> create liability for the employer under Massachusetts law.

Harbor Health therefore cannot purportedly be held liable under

a theory of <u>respondeat</u> <u>superior</u> for the unauthorized actions of

its employee, Barroso.

While that may shield Harbor Health from liability for its

alleged invasion of privacy, it does not in any way affect

liability for its alleged negligence.  Church contends, <u>inter</u>

<u>alia</u>, that Harbor Health failed to supervise its employees

sufficiently or establish appropriate technical safeguards in

-17-

its data systems, responsibilities squarely within Harbor Health's scope of employment.

As such, the Court will allow Harbor Health's motion to dismiss Count IV (invasion of privacy) but not Count III (negligence).

### 2. Claims against Michelle Tocco

Tocco urges dismissal of Counts XI and XII because they do not state viable bases for relief. With regard to invasion of privacy, Tocco insists that the complaint contains no allegations that she either directly accessed plaintiff's records or disseminated the information to a third party, both necessary elements of invasion of privacy.

A plaintiff bringing an invasion of privacy claim in Massachusetts under M.G.L. c.214, § 1B must show that there was

> 1) a gathering and dissemination of facts of a private nature that
> 2) resulted in an unreasonable, substantial or serious interference with his privacy.

Branyan v. Sw. Airlines Co., 105 F. Supp. 3d 120, 126 (D. Mass. 2015).

Without a showing that private information was actually disseminated to a third party, there is no invasion of privacy. Dasey v. Anderson, 304 F.3d 148, 153 (1st Cir. 2004); see, e.g., Tobin v. Fed. Exp. Corp., 775 F.3d 448, 451 (1st Cir. 2014) ("Disclosure (that is, proof that [a defendant] disclosed

-18-

[private information] to a third party) is an essential element
of the plaintiff's privacy claim."); Federico v. Town of Rowley,
No. 15-12360-FDS, 2016 WL 7155984, at *9 (D. Mass. Dec. 7,
2016)(ruling for summary judgment in favor of defendant when the
plaintiff did not provide evidence that defendant had actually
disclosed the private facts to anyone).

The complaint appears to contradict itself as to whether
Tocco engaged in "gathering" or "dissemination" of any kind.  In
the initial recitation of the facts, the complaint states only
that Barroso accessed plaintiff's EHR and disseminated
confidential medical information to Tocco, who in turn "used
[the records] provided to her by [Barroso] to harass, intimidate
and inflict emotional distress" on Church.  Later, in describing
the claims against Tocco individually, the complaint states that
Barroso obtained Church's medical records "in coordination with"
Tocco, who then "intentionally and maliciously published" the
records to harass Church.

To be sure, a plaintiff may survive a motion to dismiss
despite pleading inconsistent claims or inconsistent facts.
Ryan v. Greif, Inc., 708 F. Supp. 3d 148, 170 (D. Mass. 2023)
(citing Fed R. Civ. P. 8(d)(3); Consistency in Pleadings Not
Demanded, 5 Fed. Prac. & Proc. Civ. § 1283 (3d ed.)).  Here,
however, plaintiff is not "[p]leading different legal theories

-19-

. . . [that require] conflicting factual assertions." <u>Higgins</u> v. <u>Huhtamaki, Inc.</u>, No. 1:21-cv-00369-JCN, 2023 WL 6516538, at *8 (D. Me. Oct. 5, 2023).  In order for her to state a claim for invasion of privacy, Church must allege that Tocco disclosed her medical information to at least one other person, such as administrative staff, a nurse or even just a friend.  While the complaint asserts that Tocco published plaintiff's medical records, it does not specify to whom, if anyone, it was published.  The publication element might even be plausibly alleged if Tocco had discussed plaintiff's medical records in a public forum but the complaint contains no such allegation.

As such, the complaint does not state a claim for invasion of privacy sufficient to survive a motion to dismiss.

With regard to the claim of an "intentional tort," Tocco asserts that the complaint fails to specify what tort Tocco is alleged to have committed.  Tocco does, however, admit that there is "an inference" that she used the medical information to "intimidate and inflict emotional distress" upon plaintiff.

Even if the Court liberally construes the complaint as stating a claim of intentional infliction of emotion distress, plaintiff's allegations are deficient.

The elements of such a tort are "well settled" in
Massachusetts. Gouin v. Gouin, 249 F. Supp. 2d 62, 73 (D. Mass.
2003). A plaintiff must allege:

> (1) that the actor intended to inflict emotional distress
> or that he knew or should have known that emotional
> distress was the likely result of his conduct; (2) that the
> conduct was extreme and outrageous, was beyond all possible
> bounds of decency and was utterly intolerable in a
> civilized community; (3) that the actions of the defendant
> were the cause of the plaintiff's distress; and (4) that
> the emotional distress sustained by the plaintiff was
> severe and of a nature that no reasonable man could be
> expected to endure it.

Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976)
(internal citations and quotation marks omitted).

The complaint does not satisfy those elements for the same
reasons that it does not support a claim of invasion of privacy.
Plaintiff does not plead enough facts "from which [the court]
can reasonably infer[] that the defendant's conduct was 'extreme
and outrageous.'" Foley v. Polaroid Corp., 400 Mass. 82, 99
(1987). Plaintiff describes only at a high level that Tocco
"act[ed] in coordination" with Barroso to obtain her personal
health records for the purpose of harassing her. No details,
however, are provided as to what harassment took place, if any.

The Court will therefore allow defendant Tocco's motion to
dismiss without prejudice to plaintiff filing an amended
complaint. See Eastern Food Servs., Inc. v. Pontifical Catholic

Univ. Servs. Ass'n, 357 F.3d 1, 8 (1st Cir. 2004)(noting that permission to amend a complaint is often allowed after dismissal for failure to state a claim where the prospect is not hopeless).


ORDER

For the foregoing reasons,

- Michelle Tocco's motion to dismiss (Docket No. 11) is **ALLOWED**;

- Harbor Health's motion to substitute parties (Docket No. 24) is **DENIED** as moot;

- the government's motion to dismiss (Docket No. 16) is **ALLOWED**; and

- Harbor Health's motion to dismiss (Docket Nos. 23) is

    with respect to Count III, **DENIED**;

    with respect to Count IV, **ALLOWED**.


**So ordered.**

Nathaniel M. Gorton
United States District Judge


Dated:  March 25, 2025


-22-